UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OBIE L. CRISP, III,

              Plaintiff,

    v.

BRIAN DUFFY, et al.,

              Defendants.

No.  2:16-cv-0288 DB P

ORDER

Plaintiff is a former state prisoner[1] proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983.  Plaintiff alleges a violation of his right to due process in a rules violation hearing and in the subsequent appeals.  Plaintiff has consented to the jurisdiction of a magistrate judge.  (ECF No. 4.)

Before the court are plaintiff's renewed motion to proceed in forma pauperis and plaintiff's first amended complaint for screening.  For the reasons set forth below, the court will grant plaintiff's motion to proceed in forma pauperis and finds plaintiff has failed to state potentially cognizable claims under § 1983.  The court will dismiss most of plaintiff's claims without leave to amend and will dismiss plaintiff's claims for retaliation with leave to amend.

---

[1] On June 5, 2017, plaintiff filed a change of address which indicates that he is no longer incarcerated.  (ECF No. 12.)  The court then instructed plaintiff to file an updated motion to proceed in forma pauperis.  He has done so. (ECF No. 14.)

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915. (ECF Nos. 14, 15.) Accordingly, the request to proceed in forma pauperis will be granted.

**SCREENING**

**I.      Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II.     Allegations of the Complaint

Plaintiff relates a long story regarding a hearing on a rules violation report ("RVR") at which plaintiff contends he was not permitted to introduce evidence and was found guilty. Plaintiff was assessed 90 days loss of privileges ("LOP"). That RVR was overturned on appeal because it did not include appropriate consideration of plaintiff's mental health. However, plaintiff continued to suffer the LOP while awaiting a rehearing on the RVR. At that rehearing, which plaintiff claims was delayed, plaintiff was again denied the right to present some evidence, was again found guilty, and was again assessed a 90-day LOP. Plaintiff suffered almost five months LOP while his appeals were pending. Finally, after he had completed the LOP period, prison officials

////

3

"dismissed" his RVR "in the interest of justice" based on an unidentified procedural violation. (See First Am. Comp. (ECF No. 5) and Exs. to Compl. (ECF No. 7).)

Plaintiff identifies the following defendants: (1) Former Warden Brian Duffy; (2) Sr. Hearing Officer (SHO) A. Avalos; (3) SHO A. Green; (4) Chief Disciplinary Officer (CDO) P.S. Nowlin; (5) Appeals Coordinators B. Balanza, (6) T. Vang, and (7) J.A. Zamora; (8) Correctional Officer Z. Lee; and (9) Captain A. Ladson. Plaintiff seeks compensatory and punitive damages. (ECF No. 5 at 1-4.)

As best this court can determine, the following are plaintiff's specific allegations. On July 13, 2014, defendant Avalos conducted a hearing on a rules violation report ("RVR") #A-14-05-003. Avalos denied plaintiff the right to present evidence in the form of a video and a form 22 which plaintiff apparently filed against the reporting officer, Officer Farias. Plaintiff states the video would have shown that Farias initiated a confrontation with plaintiff, which apparently was the subject of the RVR. Plaintiff was found guilty, which resulted in a 90-days LOP - no phone calls, no packages, no visits, no dayroom, no weekend yard time, no holiday yard time, canteen restrictions. In addition, 90 days was added to plaintiff's sentence. (Id. at 6-7.)

On July 21, 2014, defendant Nowlin ordered a rehearing based on the fact no mental health report had been provided or considered during the RVR disposition. (Id. at 8-9; ECF No. 7 at 7.)

On August 22, 2014, plaintiff met with defendant Green. Green requested a continuance of the RVR rehearing. Plaintiff told him he would not agree to an extension. Green told plaintiff he would obtain the video footage for him. Plaintiff also appears to complain that, in violation of regulations, the RVR rehearing was conducted late and he was not permitted to meet with a staff assistant 24 hours before the hearing. Again, at this hearing, plaintiff was not provided the video footage or the opportunity to introduce his form 22. Plaintiff was again found guilty and his "already existing" LOP was extended. Green failed to include any of plaintiff's statements in the report of the hearing. (ECF No. 5 at 9-10.)

Plaintiff filed a staff complaint regarding Green's misconduct during the RVR rehearing and regarding Green's "false statements" in the report. Those false statements were that plaintiff, not

////

4

Green, had requested a continuance of the RVR rehearing and Green's "false" promise that the video footage would be considered at the rehearing. (Id. at 10.)

Defendant Balanza declared plaintiff's staff complaint against Green to be an appeal of the decision on the RVR rehearing. Balanza demanded plaintiff produce "non-existing" documentation. On October 9, 2014, Balanza denied the appeal. (Id. at 11-12.)

On October 31, 2014, plaintiff informed defendant Zamora about Balanza's abuse of discretion. Zamora then dismissed plaintiff's staff complaint against Green, citing plaintiff's failure to provide documentation. (Id. at 12.)

On October 21, 2014, defendant Duffy responded to an appeal by concluding that all actions by staff were appropriate. At some point in October 2014, defendant Nowlin did the same. (Id. at 13.)

At the end of October 2014, defendant Ladson met with another inmate, Daniel Carpenter, and was informed about the numerous form 22s sent to him regarding RVR violations. Ladson told Carpenter he would get back to him, but he never did. (Id.)

On September 13, 2014, defendant Lee "punished" plaintiff, citing RVR A-14-05-003, the original RVR. According to plaintiff, Lee was acting outside the regulations. (Id. at 14.)

On October 9, 2014, plaintiff filed his "true appeal" of the guilt finding from the RVR rehearing. That appeal was D-14-02383. He contends defendant Zamora denied his appeal by swapping it with "unrelated staff complaint D-14-02001." He states that Zamora's actions denied him the right to challenge the misconduct alleged in RVRs A-14-05-003 and D-14-06-12R. (Id. at 15.)

Plaintiff next appealed the cancellation of RVR D-14-02383. He contends defendants Zamora and Vang caused a delay in the resolution of that appeal. The delay lasted so long that plaintiff had finished his LOP by the time he received a response. (Id.)

On October 30, 2014, defendant Green conducted an appeal interview regarding appeal D-14-01860 at which he attempted to "steal" plaintiff's legal exhibits by threatening him. Green then cancelled plaintiff's appeal because plaintiff "refused" to cooperate with the interview. (Id. at 16.)

Plaintiff organizes his allegations into numerous claims. First, he alleges the conduct of his disciplinary proceedings for RVR A-14-05-003 violated numerous regulations and denied him the right to present evidence in violation of due process. (Id. at 17.) Second, he alleges regulatory violations and similar violations of due process in the processing of the RVR rehearing, #D-14-06-12R. (Id. at 17-18.) In his third and ninth claims, plaintiff contends defendant Lee retaliated against him and denied him equal protection when she denied him yard access despite being provided "clear and direct evidence" that plaintiff should have access. (Id. at 18-19, 22-23.) Fourth, plaintiff contends defendants Duffy, Ladson, Green, Zamora, and Nowlin violated his rights by failing to appropriately review plaintiff's appeals for RVR RH D-14-06-12R and D-14-12383. (Id. at 19-20.)

In his fifth, sixth, and seventh claims, plaintiff alleges defendants Duffy, Avalos, Green, and Nowlin violated his due process and equal protection rights by refusing to allow him to present video footage and a copy of his form 22 at the RVR hearing and rehearing. (Id. at 20-21.) In his eighth claim, plaintiff alleges defendants Duffy, Ladson, Green, and Nowlin violated his due process and equal protection rights when they allowed an extension of his existing LOP as a result of the rehearing. (Id. at 22.) In his tenth claim, petitioner contends defendants Duffy, Nowlin, and Green dismissed the RVR rehearing #D-14-06-12R only after plaintiff had served nearly five months of LOP. (Id. at 24.) In his claims numbered 11-14, plaintiff appears to make arguments about the processing of his grievances. In particular, he mentions delay, the cancellation of his appeals, inaction, and falsification of documents. (Id. at 26.) Plaintiff also mentions a "separate" but "related and intertwined issue" regarding defendants Zamora and Vang's cancellation of 602 appeal D-14-02708 in December 2014. (Id. at 26-27.)

In addition, plaintiff alleges state tort claims for negligence and "intentional torts," including "oppression." (Id. at 24-25.)

Plaintiff seeks compensatory, exemplary, and punitive damages for his LOP. Primarily, plaintiff appears to be concerned about the loss of a "birthday" visit in July 2014. Plaintiff states that he was prevented from seeing his mother at that time due to the LOP. She was unable to visit after that due to her failing health. She died in April 2016. (Id. at 28.)

### III. Does Plaintiff State Cognizable Claims?

As described below, most of plaintiff's allegations do not rise to the level of a federal constitutional violation cognizable under § 1983. The court will dismiss those claims. The court does find that plaintiff may be able to state a claim for retaliation

### A. Due Process Claims regarding RVR Hearings

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions result in a deprivation of "real substance." See id. at 556–57, 571–72 n.19; Sandin v. Conner, 515 U.S. 472, 484 (1995). "Real substance" is limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate

comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid  . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

Additionally, "some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." Id. at 455–56.

Plaintiff states that he was assessed a 90-day loss of privileges ("LOP"), which included the loss of visitation, loss of some yard privileges, loss of dayroom, canteen restrictions, and "90 days added to my sentence."  The assessment of a loss of good-time credits, and the resulting effect on an inmate's sentence, is a deprivation subject to Wolff's procedural protections.  See Lopez v. Celaya, No. C 06-5071 TEH (PR), 2008 WL 205256, at *4 (N.D. Cal. Jan. 23, 2008).  However, if those credits have been restored, plaintiff no longer has a claim.  See Aguilar v. Ohland, No. C 14-0949 MEJ (PR), 2015 WL 1967263, at *3 (citing Womack v. Grannis, 453 Fed. App'x 713 (9th Cir. 2011)).

Here, plaintiff states that his appeal was eventually successful.  Therefore, the court reasonably assumes that plaintiff's time credits have been restored.  This appears to be the case because plaintiff only mentions the loss of time credits in listing the loss of privileges he suffered originally.  (See ECF No. 5 at 7.)  Plaintiff's primary focus in his complaint, and the basis for his claims for damages, is the loss of visitation and other contact with family.  (See, e.g., id. at 28 (plaintiff's mother was prevented from visiting him in 2014 and thereafter became too ill to do so and, in 2016, passed away).)

Courts have held that a loss of visitation is not the sort of hardship that implicates a federally protected liberty interest because a prisoner's interest in unfettered visitation is not guaranteed by the Due Process Clause itself.  See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 464-65 (1989) (finding no protected liberty interest in Kentucky visitation regulations); see also Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (prisoners have no constitutional right to contact or conjugal visitation); Pratt v. Hedrick, No. C 13-4557 SI (pr), 2014 WL 280626, at *3

8

(N.D. Cal. Jan. 24, 2014) (30 days loss-of-privileges status alone does not amount to an atypical and significant hardship under <u>Sandin</u> so as to trigger any need for procedural protections under the federal constitution); <u>Van Mathis v. Graber</u>, No. C 07–3498 WHA (PR), 2008 WL 912932, *2 (N.D. Cal. Apr. 3, 2008) (twenty-one day loss of privileges was not sufficient to constitute an atypical condition of confinement and plaintiff's due process rights were therefore not implicated by the hearing); <u>Rahman X v. Morgan</u>, 300 F.3d 970, 973–74 (8th Cir. 2002) (no due process claim for deprivation of television, certain property, access to commissary and restrictions on outdoor exercise for twenty-six months); <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir.1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003) (administrative segregation, and the conditions typically imposed there, does not implicate a protected liberty interest).

Further, allegations that plaintiff suffered mental and emotional pain, do not suffice to plead an atypical and significant hardship. <u>See</u> <u>Reddic v. Evans</u>, No. C-10-1580 SI (PR), 2011 WL 2181311, at *5 (N.D. Cal. June 3, 2011). For these reasons, the court finds plaintiff has not, and cannot, state due process claims for the conduct of the RVR hearing and RVR rehearing.

## B. Claims regarding Grievance Procedures

Petitioner also makes numerous allegations about the way his grievances and appeals were handled. However, prisoners are not entitled to a specific grievance procedure. <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988)). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." <u>Azeez v. DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982); <u>accord</u> <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993); <u>see also</u> <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." <u>Azeez</u>, 568 F. Supp. at 10; <u>Spencer v. Moore</u>, 638 F. Supp. 315, 316 (E.D. Mo. 1986); <u>Jones v. Corizon Health</u>, No. 1:16-cv-1055-SKO

(PC), 2017 WL 2225075, at *6 (E.D. Cal. May 22, 2017).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656–57 (7th Cir. 2005); see also George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007). Plaintiff fails to show any basis for constitutional claims based on the handling of his grievances and appeals.

## C. False Disciplinary Report

To the extent plaintiff is alleging that the finding of guilt on the RVR was based on a false report, or was itself false, plaintiff is advised that there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a stand-alone constitutional claim. See Luster v. Amezcua, No. 1:16-cv-0554-DAD-GSA-PC, 2017 WL 772141, at *5 (E.D. Cal. Feb. 27, 2017). Specifically, "the fact that a prisoner may have been innocent of disciplinary charges brought against him . . . does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, No. 1:14-cv-2084-SAB(PC), 2015 WL 1014257, *2 (E.D. Cal. Mar. 6, 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994) and McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, plaintiff has no protected liberty interest in freedom from false claims against him.

## D. Harassment

Throughout his first amended complaint, plaintiff states that he was subjected to harassment and oppression and threatened. However, neither threats nor harassment state a claim under § 1983. See Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), aff'd sub nom., Kush v. Rutledge, 460 U.S. 719 (1983); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result); Franklin v. Oregon, 662 F.2d

10

1337, 1344 (9th Cir. 1981) (allegations of harassment with regards to medical problems not

cognizable); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (Arkansas state prisoner

does not have cause of action under § 1983 for being called obscene name by prison employee);

Batton v. North Carolina, 501 F. Supp. 1173, 1180 (E.D. N.C. 1980) (mere verbal abuse by

prison officials does not state claim under § 1983).

### E. Retaliation

Plaintiff mentions "reprisal" in various parts of his complaint but makes only one specific

allegation that a defendant's conduct constituted relations.  Plaintiff alleges that defendant Lee's

refusal to allow him some privileges was done in erroneous reliance on the original RVR and was

retaliatory.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic

elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and

citations omitted).

Under the first element, plaintiff need not prove that the alleged retaliatory action, in itself,

violated a constitutional right.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a

retaliation claim, plaintiff need not "establish an independent constitutional interest" was

violated); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base

retaliation claims on harms that would not raise due process concerns."); Rizzo v. Dawson, 778

F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action

for purposes of retaliation claim).  The interest cognizable in a retaliation claim is the right to be

free of conditions that would not have been imposed but for the alleged retaliatory motive.

However, not every allegedly adverse action is sufficient to support a claim for retaliation under §

1983.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (harm must be "more than

minimal"); see also Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions

are so de minimis that they do not give rise to constitutionally cognizable injuries.").

To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882–83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

The third element includes prisoners' First Amendment right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n. 2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

Under the fourth element, plaintiff need not demonstrate a "total chilling of his First Amendment rights," only that defendant's challenged conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." Id. at 568–69 (citation and internal quotation marks omitted). Moreover, direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 568 n. 11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 568 n. 11).

Regarding the fifth element, the Ninth Circuit has held that preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo, 778 F.2d at 532. When considering this final factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for defendant's challenged conduct. Id. at 806.

In his first amended complaint, plaintiff simply states that defendant Lee's actions in denying him yard access were done in "reprisal." (See ECF No. 5 at 18-19.) However, plaintiff does not explain how Lee's actions were in response to plaintiff's exercise of a protected right. At various other points in his complaint, plaintiff mentions "reprisal" in a list of the many legal violations he claims to have suffered (see, e.g., id. at 8), but, again, does not explain why he feels he has been subjected to retaliation. While the court finds plaintiff has not stated a claim for retaliation, he may be able to allege further facts that make out a cognizable claim. Therefore, plaintiff will be given an opportunity to file an amended complaint to state a claim for retaliation.

**F.  Potential State Law Claims**

Any violation of state tort law, state regulations, rules and policies of the department of corrections, or other state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal Constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law."). Although the court may exercise supplemental jurisdiction over state law claims, plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

Because the court finds above that plaintiff fails to state any cognizable federal claims, the court will not exercise supplemental jurisdiction over plaintiff's putative state law claims.[2] While

---

[2] The court takes no position on whether plaintiff would be able to successfully pursue his claims in state court.

the court finds plaintiff has not stated a claim for retaliation, he may be able to allege further facts that make out a cognizable claim.  Therefore, plaintiff will be given an opportunity to file an amended complaint to state a claim for retaliation.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction).

## CONCLUSION

The court finds plaintiff fails to state federal constitutional claims on any grounds.  The next question is whether plaintiff should be given the opportunity to amend his complaint.  Where a court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).  Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)).  However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend.  Cato, 70 F.3d at 1005-06.

Here, the court cannot conceive of any basis for plaintiff to amend his claims regarding the conduct of the RVR hearing, the conduct of the RVR rehearing, the delay in holding the RVR rehearing, or the processing of his appeals.  Therefore, those claims will be dismissed without leave to amend.

Plaintiff's claims for retaliation are less clear.  Plaintiff will be given an opportunity to amend his complaint to attempt to state any claims for retaliation.  Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  If plaintiff wishes to add a claim, he must include it in the body of the complaint.  The charging allegations must be set forth

14

in the amended complaint so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

////

////

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1. Plaintiff's renewed motion to proceed in forma pauperis (ECF No. 14) is granted.

2. All claims in plaintiff's complaint are dismissed without leave to amend, except his claim for retaliation. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint." Plaintiff must file an original and two copies of the amended complaint. Plaintiff's failure to file an amended complaint within the time provided, or otherwise respond to this order, may result in dismissal of this case.

3. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated: August 1, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/cris0288.scrn